## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20990-CIV-KING/BANDSTRA

UNITED STATES *ex rel.*
BETTY BARBER and ROXANNE A. JOFFE,

Plaintiffs,

v.

PAYCHEX, INC., AUTOMATIC DATA
PROCESSING, INC., and CERIDIAN
CORPORATION, a wholly-owned subsidiary of
Ceridian Holding Corp.,

Defendants.

**OPINION AND ORDER OF
DISMISSAL
WITH PREJUDICE**

**JAMES LAWRENCE KING**, District Judge:

This is an action brought by relators Betty Barber ("Barber") and Roxanne Joffe

("Joffe") (together, the "Relators") under the *qui tam* provisions of the False Claims Act,

31 U.S.C. §§ 3729-30 (the "FCA").[1]

All of the defendants have now moved to dismiss the Complaint in its entirety.

For the reasons set forth below, defendants' motions are granted in full.

---

[1]    The FCA has been amended twice since this case was filed in April 2009 -- in the Fraud
Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617, and in the
Patient Protection and Affordable Care Act of 2010, Pub. L. 111-148, 124 Stat. 119. These
amendments, however, do not apply retroactively to this action. *See Graham County Soil &
Water Conservation Dist.* v. *United States ex rel. Wilson*, 130 S. Ct. 1396, 1400 n.1 (2010)
(2010 FCA amendments do not apply retroactively); *Hopper* v. *Solvay Pharm., Inc.*, 588
F.3d 1318, 1327 n.3 (11th Cir. 2009) (2009 FCA amendments do not apply retroactively).
Thus, all references to the FCA in this Opinion and Order are to the version of the statute
prior to these amendments.

## I.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint and are accepted as true for the purposes of ruling on defendants' motions.[2]

**The Parties**

Relators Barber and Joffe are not typical "whistleblowers," but rather attorneys, who, by their own admission, have no connection to defendants outside of this lawsuit. Indeed, on these motions, it is conceded that Relators have no independent knowledge of the facts alleged in the Complaint beyond reading defendants' publicly-available filings with the United States Securities and Exchange Commission (the "SEC"), as well as other publicly-disclosed information concerning defendants and their business practices.

Defendants Paychex, Inc. ("Paychex"), Automatic Data Processing, Inc. ("ADP") and Ceridian Corporation ("Ceridian") are three of the largest providers of outsourced payroll, tax, human resources and benefits administrative services for numerous businesses in the United States and elsewhere. Primarily, and as relevant here, clients retain Paychex, ADP and Ceridian for their payroll and payroll tax filing services -- specifically, to manage and process the regular payment of wages to the clients' employees, and to calculate, collect and remit, on behalf of their

---

[2] *See, e.g.*, *Sinaltrainal* v. *Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (on both a motion to dismiss for failure to state a claim under Rule 12(b)(6) and a "facial" motion to dismiss under Rule 12(b)(1) for lack of jurisdiction, both of which, as discussed further below, apply here, "the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged . . . in the complaint as true"). Certain undisputed facts not contained in the Complaint are also described here, given that defendants' motions also present a "factual" attack on this Court's jurisdiction. *See id.* (a "factual" attack on subject matter jurisdiction under Rule 12(b)(1) "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings," and, in such a situation, "matters outside the pleadings, such as testimony and affidavits, are considered" (internal quotation marks omitted)).

clients, the appropriate level of Federal, State and local payroll-related taxes. Clients pay fees to defendants for these services.

There is no dispute that, during the period of time between defendants' receipt of client funds and their disbursement of those funds, either to employees (as wages) or to the appropriate taxing authorities (as taxes), Paychex, ADP and Ceridian invest these funds and receive interest income on those investments (sometimes called the "float").

## Relators' *Qui Tam* Complaint

Section 3729(a)(7) of the False Claims Act makes it unlawful to "knowingly make[], use[], or cause[] to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7). This provision was added to the FCA in 1986 "to provide that an individual who makes a material misrepresentation to avoid paying money owed to the Government would be equally liable under the Act as if he had submitted a false claim to receive money." *United States ex rel. Cullins* v. *Astra, Inc.*, No. 09-60696-CIV., 2010 WL 625279, at *5 (S.D. Fla. Feb. 17, 2010). Unlike the more familiar type of FCA action alleging "a false or fraudulent claim for payment," in a "reverse false claims" action, "the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated." *Id.*

In their Complaint, Relators allege -- in what they call "a case of first impression" -- that certain statements made in defendants' Federal income tax returns constitute "reverse false claims" in violation of 31 U.S.C. § 3729(a)(7).

In particular, Relators allege, on information and belief (as, presumably, Relators have never seen defendants' actual tax returns), that each defendant claims in its Federal tax returns as its own income the interest it earns from its investment of its clients' funds. Relators

3

allege this is inaccurate and thus a "false" claim. The "false records or statements" Relators seek to remedy under section 3729(a)(7) are contained in the defendants' Federal corporate income tax returns for fiscal years 2006 through 2008, where defendants include, as the taxable income of the defendants, the interest on the amounts they earn from investing their clients' funds.

According to Relators, the interest income defendants earn on the client funds they hold (or, although Relators are not precise on this point, at least that portion that relates to interest earned on client funds held for payment of Federal taxes) does not, in fact, belong to defendants, but rather belongs to the Federal government. The Complaint alleges that each defendant, "acting in the dual capacities of a financial intermediary and a fiduciary, is not entitled to recognize" such interest "as a constituent element of its taxable income." Relators therefore allege that defendants' inclusion of these amounts "representing 'interest on funds held for clients' as a constituent element of" their taxable income on their Federal income tax returns for such years constitutes the making of "reverse false claims," in violation of 31 U.S.C. § 3729(a)(7), because such amounts in fact belong to the United States government.

**Prior Public Disclosure of Defendants' Business Practices**

As exhibits to their respective motions to dismiss, defendants submitted to the Court a substantial collection of public documents -- including newspaper and magazine articles, transcripts of cable news segments, Federal and State court decisions, stock analyst reports, IRS letter rulings and internet website pages -- dating back many years and discussing the business practices of defendants that Relators seek to challenge here. As defendants point out, these materials disclose that defendants regularly invest and receive interest income on the funds they receive from their clients, including client funds received for Federal and other tax payments.[3]

---

[3]    The public disclosures submitted by defendants and considered by the Court come from a variety of sources, including:  (a) newspaper and magazine articles; (b) television news

Defendants point out they disclosed much of this information themselves, through their regular public securities filings with the SEC, which have described for several years the practices that Relators now challenge. (Schnapp Decl., D.E. # 40, Ex. 32, ADP Form 10-K FY 2006, at 60; Ex. 33, ADP Form 10-K FY 2007, at 59; Smith Decl., D.E. # 36, Ex. G, Paychex Form 10-K FY 2006, at 4, 5; Ex. H, Paychex Form 10-K FY 2007, at 4; Rock Decl., D.E. # 34, Ex. 20, Ceridian Form 10-K FY 2008, at 6.)

In addition to these SEC filings, defendants point out that there has been extensive public disclosure of these business practices in the news media, court decisions and elsewhere, including:

- *CNN Financial News*, June 30, 2004: Paychex, ADP and Ceridian "take the float -- the taxes that are due to the IRS on some of the payrolls for companies that they do payroll outsourcing, they invest in short-term securities before that gets transferred over to the IRS. So they generate interest income."

- *Forbes*, January 2, 1995: "Increasingly the firm [ADP] collects its clients' payroll taxes and then pays the money to the tax collectors one or two days later, earning interest on the float. With short-term interest rates rising in 1994, close to a third of ADP's profits were accounted for by interest earned on withheld payroll tax."

---

reports; (c) internet websites; (d) stock analyst reports; (e) Federal and State appellate court decisions; (f) company press releases; (g) public SEC filings; (h) publicly-available IRS letter rulings; and (i) a publicly-available IRS general counsel memorandum. (*See* Smith Decl., D.E. # 36, Exs. A-Z; Schnapp Decl., D.E. #s 38-40, Exs. 1-35; Rock Decl., D.E. # 34, Exs. 1-18; Rock Reply Decl., D.E. # 74, Exs. A-B.) As noted above, while these public disclosures are not alleged in the Complaint, in determining whether subject matter jurisdiction exists, the Court may consider matters outside the pleadings, including, as in this case, exhibits submitted by declaration. *United States ex rel. McElmurray* v. *Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007); *United States ex rel. Dodge* v. *ACS State & Local Solutions, Inc.*, No. 8:03-cv-65-T-30TGW, 2009 WL 928310, at *1-2 (M.D. Fla. Apr. 3, 2009).

- *Automatic Data Processing, Inc. v. Illinois Department of Revenue*, 729 N.E. 2d 897 (Ill. App. Ct. 2000): "In the course of its business, ADP's employer services division often takes charge of as much as a billion dollars for its clients before paying the money out as taxes, wages and other disbursements. ADP will invest this money in the few days it has control of it. Investing this 'float' is a significant source of ADP's income."

- *Investor's Business Daily*, October 17, 2005: "One of [Paychex]'s jobs is to hold cash for customers. The cash eventually gets sent to the government to cover income and other taxes. The money Paychex holds doesn't just sit there doing nothing. It also earns interest that Paychex gets to pocket."

- *Daily Deal*, January 24, 2001: "ADP, Ceridian Corp. and Paychex Inc. . . . make as much as 40% of their profits from the float on payroll and withholding tax funds."

## II.

## PROCEDURAL HISTORY

On April 15, 2009, Relators filed their *qui tam* FCA Complaint against Paychex, ADP and Ceridian under seal. On December 17, 2009 -- eight months later, and after requesting and receiving a six-month extension of time to investigate Relators' claims -- the United States, through the Civil Division of the Department of Justice and the United States Attorney's Office for the Southern District of Florida, notified the Court of its decision not to intervene in the action. Pursuant to 31 U.S.C. § 3730(b), the Court then unsealed the case in February 2010, and Relators' Complaint was subsequently served on each of the three defendants.

On April 30, 2010, Paychex, ADP and Ceridian each filed motions to dismiss the Complaint pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. In their motion papers, each defendant argued that Relators' FCA claims were foreclosed, and should be dismissed with prejudice: (a) under the FCA's so-called "Tax Bar," 31 U.S.C.

§ 3729(e); (b) under the FCA's so-called "Public Disclosure Bar," 31 U.S.C. § 3730(e)(4)(A); and (c) on pleading grounds.

On June 7, 2010, Relators filed their consolidated opposition to defendants' motions to dismiss. On June 21, 2010, Paychex, ADP and Ceridian filed their separate replies.

On June 22, 2010, the Court heard oral argument from all of the parties on defendants' motions to dismiss. At the conclusion -- and having considered the parties' oral arguments and all the pleadings and papers submitted in the action -- the Court ruled from the bench that Relators' Complaint was dismissed with prejudice under the Tax Bar, the Public Disclosure Bar, and for failure to meet the requisite pleading standards under Federal Rules 12(b)(6) and 9(b). In this Opinion and Order, the Court further articulates and expands upon the bases for its decision.

## III.

## ANALYSIS

At the outset, the Court notes that defendants move to dismiss Relators' Complaint for lack of subject matter jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, for failure to state a claim, under Rule 12(b)(6), and for failure to meet various pleading requirements, including Rule 9(b).

The governing legal standards under these Rules are well settled.

As to Rule 12(b)(1) -- which defendants rely upon for their challenges to the Complaint under the FCA's Tax Bar and Public Disclosure Bar -- the Eleventh Circuit has held that the Rule allows for jurisdictional motions to dismiss "based upon either a facial or a factual challenge to the complaint." *United States ex rel. McElmurray* v. *Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). On a "facial attack," the Court looks only to the complaint to "see if [the] plaintiff has sufficiently alleged a basis of subject matter

7

jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Id.* Here, defendants make a facial challenge to the Court's jurisdiction under the Tax Bar, and both a facial and a factual challenge under the Public Disclosure Bar.

Defendants' remaining argument on these motions -- that Relators have failed to state a cognizable cause of action -- is governed by the familiar standards of Rule 12(b)(6) and Rule 9(b). As the Supreme Court has recently clarified, "only a claim that states a plausible claim for relief survives a motion to dismiss" under Rule 12(b)(6). *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see also id.* at 1949 (holding that a pleading "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'" (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007))). In addition, in this FCA action, Relators must also meet "the heightened pleading standard of Rule 9(b)," under which "a party must state with particularity the circumstances constituting fraud." *Hopper* v. *Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)) (internal quotation marks omitted).

The Court now addresses, in turn, each of the three grounds for dismissal that defendants assert on these motions.

## A.    The FCA's Tax Bar

The FCA's Tax Bar provides:

> This section [*i.e.*, § 3729, which contains the liability provisions of the FCA] does not apply to claims, records, or statements made under the Internal Revenue Code of 1986.

31 U.S.C. § 3729(e).[4]

The law is settled that, in interpreting a statute, a court should "always begin with its plain language." *Nguyen* v. *United States*, 556 F.3d 1244, 1250 (11th Cir. 2009). The Supreme Court has made clear that, "[w]hen the words of a statute are unambiguous, then . . . 'judicial inquiry is complete'" and the plain language of the statute's text is to be enforced. *Conn. Nat'l Bank* v. *Germain*, 503 U.S. 249, 254 (1992) (quoting *Rubin* v. *United States*, 449 U.S. 424, 430 (1981)); *see also Harris* v. *Garner*, 216 F.3d 970, 972-73 (11th Cir. 2000).

As courts have noted, "Congress could not have expressed its intent more clearly than it did in § 3729(e)." *Patriot Tax Int'l, LLC* v. *Diaz*, No. 07-262-JBL, 2008 WL 2705450, at *3 (E.D. Ky. July 3, 2008) (quoting *Almeida*, 50 F. Supp. 2d at 126-27); *Lissack*, 2003 WL 21998968, at *7-8. Under "the plain language of the Tax Bar," any and all "causes of action involving fraudulent claims, records, or statements made to the government under the Tax Code are expressly excluded from the scope of the FCA." *United States ex rel. Lissack* v. *Sakura Global Capital Mkts., Inc.*, 377 F.3d 145, 154 (2d Cir. 2004); *Patriot Tax*, 2008 WL 2705450, at *3 (emphasis added).

Here, as noted above, Relators allege that Defendants made false records or statements in their respective 2006, 2007, and 2008 Federal corporate income tax returns. Such

---

[4] Because defendants' Tax Bar argument, and this Court's analysis, looks only to the Complaint and does not rely on extrinsic evidence, it is a "facial attack" on the Court's jurisdiction, under which "the allegations in [the] complaint are taken as true for the purposes of the motion." *McElmurray*, 501 F.3d at 1251; *see supra* pp. 7-8; *see also, e.g., United States ex rel. Lissack* v. *Sakura Global Capital Mkts., Inc.*, No. 95 Civ. 1363 (BSJ), 2003 WL 21998968, at *4-8 (S.D.N.Y. Aug. 21, 2003), *aff'd*, 377 F.3d 145 (2d Cir. 2004) (jurisdictional motion under Rule 12(b)(1) is the proper method for bringing a motion to dismiss based on the Tax Bar). While some courts have considered the Tax Bar argument under Rule 12(b)(6), *see, e.g. Almeida* v. *United Steelworkers of Am. Int'l Union*, 50 F. Supp. 2d 115, 126-27 (D.R.I. 1999), the standard of review -- and the Court's decision -- would be the same under either Rule.

Federal income tax returns plainly constitute "records or statements made under the Internal Revenue Code." *See Patriot Tax*, 2008 WL 2705450, at *3-4 (holding that FCA action based on allegedly false tax returns was barred by "the language of § 3729(e) alone"); *see also* 1 John T. Boese, *Civil False Claims and Qui Tam Actions* § 2.02[1] (3d ed. 2010) ("Congress has never intended to apply the [FCA] to tax returns."). Thus, by its literal language, the Tax Bar forecloses Relators' claims against defendants in this action.

The case law construing the FCA's Tax Bar also supports dismissal of Relators' Complaint for lack of subject matter jurisdiction. *See, e.g., Lissack*, 377 F.3d at 153-54, 157; *Patriot Tax*, 2008 WL 2705450, at *3-4. The Second Circuit's decision in *Lissack* is particularly instructive. In *Lissack*, the Second Circuit affirmed the dismissal of an FCA action under the Tax Bar, even though the relator "d[id] not seek to collect taxes," because (a) the basis for the FCA claims at issue turned on the proper interpretation of the Internal Revenue Code, and (b) the claims being alleged could be pursued by the Treasury Department or the IRS, if either saw fit to pursue them. 377 F.3d at 153; *see also Patriot Tax*, 2008 WL 2705450, at *4 (following *Lissack*).

The *Lissack* factors are not absolute prerequisites to the application of the Tax Bar. *See Lissack*, 377 F.3d at 153 (noting that its decision did not set forth the "outer boundaries" of the Tax Bar); *Patriot Tax*, 2008 WL 2705450, at *3-4 (holding that the specific bases for the *Lissack* decision were not necessary conditions for application of the Tax Bar, and that an FCA action based on allegedly false tax returns was barred by "the language of § 3729(e) alone"). Nevertheless, even if the Court were to apply the *Lissack* factors, each provides a basis for dismissal in this case as well.

First, as in both *Lissack* and *Patriot Tax*, the Relators' action is based upon conduct that allegedly violates or is inconsistent with the Internal Revenue Code. *See Lissack*,

377 F.3d at 153-55; *Patriot Tax*, 2008 WL 2705450, at *4. Specifically, as became clear through the briefing on these motions, Relators' claims are based upon Relators' construction of section 7501 of the Internal Revenue Code, 26 U.S.C. § 7501. That section of the Code provides that the amount of taxes collected or withheld from a party for payment to the Federal government "shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501. Relators allege this provision (a) imposes fiduciary duties on employers and, in turn, defendants and (b) requires that the interest that Paychex, ADP and Ceridian earn on client funds intended for payment as Federal taxes be property of the United States government.

In particular, Relators allege that section 7501 imposes a "trust" on the funds clients provide to defendants to make Federal tax payments. (Although Relators are not clear on the nuances of their theory, it appears that Relators allege that such a "trust" arises the moment the related wages are paid to employees.)[5] Relators then argue that, given the common law doctrine that "interest follows principal," which doctrine Relators argue the United States Supreme Court recognized in *Phillips* v. *Washington Legal Foundation*, 524 U.S. 156 (1998), the interest on such funds belongs to the Federal government.

Defendants dispute all this, arguing that, in *Begier* v. *United States*, 496 U.S. 53 (1990), the Supreme Court expressly held that section 7501 does not create a "trust" in the usual sense. *Id.* at 62 ("A § 7501 trust is radically different from the common-law [trust] paradigm . . . ."). Rather, defendants contend, under *Begier*, this section solely deems the specific amounts due as Federal taxes from employers to be a "special fund in trust," such that other creditors cannot obtain access to those amounts. *See id.* Defendants also cite to a publicly-available 1980

---

[5]   Relators do not appear to dispute that the amounts of the tax payments themselves need not be paid over to the Federal government until their due dates -- and thus may be held by defendants until that time.

opinion of the General Counsel of the IRS confirming this view of section 7501 and expressly noting that the section does not prohibit employers from using funds that represent tax withholdings, nor does it "require the return of any gain derived from such use." (Rock Reply Decl., D.E. # 74, Ex. A, I.R.S. Gen. Couns. Mem. 38,276 (Feb. 7, 1980)).

Whatever the merits of Relators' "trust" argument (an issue that the Court need not resolve on these motions to dismiss), it clearly turns on the proper interpretation of the Tax Code, and section 7501 in particular. Thus, the first *Lissack* factor -- whether Relators' FCA claims turn upon an interpretation of the Tax Code -- supports application of the Tax Bar here. *See, e.g., Lissack,* 377 F.3d at 154 ("Because [relator's] FCA claim rises or falls on finding a violation of the Tax Code, his is precisely the kind of claim that falls within the plain language of the Tax Bar.")[6]

The second *Lissack* factor -- whether the IRS can bring an action against defendants to collect the money Relators are seeking -- also supports dismissal of Relators' Complaint under the Tax Bar. *See Lissack,* 377 F.3d at 153, 155-56; *Patriot Tax,* 2008 WL 2705450, at *4. The IRS has the authority to address violations of the Tax Code, including violations of section 7501, and certainly could proceed against Paychex, ADP and Ceridian to

---

[6]   Relators argue that the legal basis for their claims is not the Tax Code, but the Miscellaneous Receipts Act, 31 U.S.C. § 3302 (the "MRA"). To begin with, that statute is meant to apply to the conduct of officials or agents of the United States government, not private entities like Paychex, ADP and Ceridian. *See, e.g., Thomas* v. *Network Solutions, Inc.,* 176 F.3d 500, 511 (D.C. Cir. 1999) (refusing to apply the MRA to fees paid to a private party); *see also AINS, Inc.* v. *United States,* 56 Fed. Cl. 522, 539 (2003) ("All the Act literally requires is that miscellaneous money received by government officials be deposited in the general Treasury."). In any event, Relators' argument as to the MRA still relies upon their argument that (a) section 7501 creates a "trust" on tax payments due to the Federal Government and (b) interest on that "trust" belongs to the Federal Government; it is only for those reasons that, according to Relators, such interest falls within the scope of the MRA. As such, Relators' claims still turn on the proper interpretation of the Tax Code, and thus fall within the Tax Bar.

recover any amount owed due to the government for an incorrect classification of income in a tax return, as Relators allege in this case. *See* 26 U.S.C. §§ 7501(b), 6672, 7401.

Finally, Relators argue the Tax Bar should not apply here because defendants' reporting of their interest income on their tax returns is not a statement made under the Tax Code because it is, according to Relators, "gratuitous" -- that is, defendants should not be reporting such interest as income on their tax returns (or paying taxes on it). This argument does not hold up on analysis. Whatever Relators think of defendants' reporting of the interest on their tax returns, and even if defendants were incorrect in classifying that interest as their own income (a question, again, that the Court need not resolve on these motions to dismiss), the statements at issue are certainly being made "under the Internal Revenue Code."

Accordingly, Relators' FCA claims against Paychex, ADP and Ceridian are prohibited by the Tax Bar -- by its literal terms and as construed in the relevant case law -- and this Court is therefore without subject matter jurisdiction to hear Relators' Complaint.

**B.     The FCA's Public Disclosure Bar**

The FCA's Public Disclosure Bar states that:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative or Government Account[ability] Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A); *see also Graham County*, 130 S. Ct. at 1404 (noting that "the FCA's public disclosure bar . . . deprives courts of jurisdiction over *qui tam* suits when the relevant information has already entered the public domain through certain channels").

To determine if subject matter jurisdiction exists over a *qui tam* FCA claim under the Public Disclosure Bar, a court in this Circuit makes the following three inquiries: "(1) have

the allegations made by the [relator] been publicly disclosed; (2) if so, is the disclosed information the basis of the [relator]'s suit; (3) if yes, is the [relator] an 'original source' of that information." *United States ex rel. Battle* v. *Bd. of Regents*, 468 F.3d 755, 762 (11th Cir. 2006); *United States ex rel. Cooper* v. *Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 565 n.4 (11th Cir. 1994). The Eleventh Circuit has held that "[t]he FCA precludes suits based *in any part* on publicly disclosed information." *United States ex rel. Brown* v. *Walt Disney World Co.*, No. 08-16350, 2010 WL 114964, at *1 (11th Cir. Jan. 14, 2010), *cert. denied*, --- S. Ct. ----, 2010 WL 1528516 (June 7, 2010); *see Battle*, 468 F.3d at 762; *Cooper*, 19 F.3d at 567. The burden is on the Relators to establish that the Court has jurisdiction over the *qui tam* action. *See Walt Disney World Co.*, 2010 WL 114964, at *1.

Here, Relators do not dispute that the facts concerning defendants' relevant practices have been publicly disclosed. (Indeed, Relators appear to concede they learned of those facts themselves by reading defendants' SEC filings.) And the Court expressly finds that these practices have been publicly disclosed in any event. Nor do Relators dispute that the forms of disclosure Paychex, ADP and Ceridian point to in their motions -- newspaper and magazine articles, court decisions, cable news shows, securities filings, analyst reports and internet websites -- constitute the kind of "public disclosure" covered by section 3730(e)(4)(A). *See, e.g., United States ex rel. Westfall* v. *Axiom Worldwide, Inc.*, No. 8:06-cv-571-T-33TBM, 2009 WL 764528, at *5 (M.D. Fla. Mar. 20, 2009) ("The Eleventh Circuit interprets 'public disclosure' broadly to include information disclosed in prior lawsuits, in television news reports, in newspaper articles, and other public disseminations."). Relators also do not deny that their Complaint is "based upon" these public disclosures, within the meaning of the FCA. *See Cooper*, 19 F.3d at 567-68 (a relator's allegations are deemed to be "based upon" a "public disclosure" -- and, thus, jurisdictionally barred -- so long as they are "supported by" the

14

information publicly-disclosed); *see also United States ex rel. Ondis* v. *City of Woonsocket*, 587 F.3d 49, 57 (1st Cir. 2009) ("The majority view holds that as long as the relator's allegations are substantially similar to information disclosed publicly, the relator's claim is 'based upon' the public disclosure even if he actually obtained his information from a different source.") (citing *Cooper*, 19 F.3d at 567)). And, Relators have never contended they are "original sources" of the information in the Complaint. *See* 31 U.S.C. § 3730(e)(4)(B) (defining "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action"); *Battle*, 468 F.3d at 762.

Relators argue only that the public disclosures at issue here do not deprive the Court of jurisdiction because they do not contain the specific *legal assertions* that Relators make as to why defendants' claims to the interest earned on their client funds are supposedly false -- and thus, according to Relators, do not constitute a disclosure of the "allegations" contained in the Complaint, 31 U.S.C. § 3730(e)(4)(A). This argument, however, misapprehends the Public Disclosure Bar.

The Eleventh Circuit construes the FCA's "allegations or transactions" requirement "broadly," so as to bar any "*qui tam* suits based on publicly disclosed *information*." *United States ex rel. Brickman* v. *Bus. Loan Express, LLC*, No. 1:05-CV-3147-JEC, 2007 WL 4553474, at *6-7 (N.D. Ga. Dec. 18, 2007) (citing *McElmurray*, 501 F.3d at 1253; *Battle*, 468 F.3d at 762; and *Cooper*, 19 F.3d at 565) (emphasis in original), *aff'd*, 310 F. App'x 322 (11th Cir. 2009). In their opposition papers, Relators rely on the D.C. Circuit's analysis of the Public Disclosure Bar in *United States ex rel. Springfield Terminal Railway Co.* v. *Quinn*, 14 F.3d 645 (D.C. Cir. 1994). As the District Court noted in *Brickman*, however, the case law in the Eleventh Circuit does not follow *Springfield. Brickman*, 2007 WL 4553474, at *7 (citing cases); *see id.*

("Relators' reliance on *Springfield* is misplaced."). Under the Eleventh Circuit's expansive "publicly disclosed information" standard, there can be no doubt -- indeed, even Relators do not appear to dispute -- that the numerous public disclosures submitted in support of defendants' motions describe, in more than sufficient detail, the *information* on which Relators base their purported FCA claims.

Moreover, even if the Court were to apply *Springfield*, the public disclosures defendants have submitted are more than sufficient to trigger the FCA's Public Disclosure Bar. As discussed above, the underlying facts in this case have been the subject of widespread public disclosure. All that Relators have added in the Complaint, as they have admitted in their opposition papers and at oral argument, are their own legal interpretations, conclusions and "unclouded judgment": specifically, their contentions that Paychex, ADP and Ceridian have made "reverse false claims," in violation of 31 U.S.C. § 3729(a)(7), because, according to Relators, under section 7501 of the Tax Code, and the rule of "interest follows principal," the defendants were not entitled to report the interest earned on client funds held for Federal tax payments as their own taxable income.

Settled law squarely holds that where, as here, the factual information underlying the claims is already available in the public domain, these sorts of contributions make no difference to the application of the Public Disclosure Bar. *See, e.g., McElmurray*, 501 F.3d at 1250-51; *A-1 Ambulance Serv., Inc.* v. *California*, 202 F.3d 1238 (9th Cir. 2000). In *A-1 Ambulance Service*, for example, the Ninth Circuit held that disclosure of "the material facts" underlying a purported False Claims Act claim is enough to preclude that claim under the Public Disclosure Bar; that a relator may have been the first to attach legal wrongdoing to these underlying facts "is simply of no moment." 202 F.3d at 1245 (explaining that the "mere fact that [the relator's] own expertise . . . enabled it to formulate its novel legal theory of fraud is

16

irrelevant to the question of whether the material transactions giving rise to the alleged fraud were already disclosed in the public domain in the first place").[7]

Indeed, in *Springfield* itself, the D.C. Circuit noted that, to avoid the preclusive effect of the Public Disclosure Bar, "the relator must possess substantive information about the particular fraud, rather than merely background information which enables a putative relator to understand the significance of a publicly disclosed transaction or allegation." 14 F.3d at 655 (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A.* v. *Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991)). Here, Relators admittedly possess no substantive information at all -- making this precisely the sort of "parasitic lawsuit[]" that the Public Disclosure Bar is designed to prohibit. *Graham County*, 130 S. Ct. at 1407-08; *see also Brickman*, 2007 WL 4553474, at *3 n.4 (the Public Disclosure Bar "reflects a struggle to encourage private individuals to come forward with information about government fraud while prohibiting 'parasitic lawsuits' based on information that is already in the public domain").

Accordingly, Relators have not met their burden here. Thus, under the Public Disclosure Bar, the Court lacks subject matter jurisdiction over Relators' Complaint.

## C.   Pleading Requirements

Finally, defendants contend that Relators' Complaint also fails because it does not meet the pleading standards applicable to FCA claims.

---

[7]   *See also, e.g., United States ex rel. Feldstein* v. *Organon, Inc.*, 364 F. App'x 738, 2010 WL 358078, at *4 (3d Cir. Feb. 2, 2010) (holding that a "relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation already have been publicly disclosed" and that, thus, under the Public Disclosure Bar, the court lacked jurisdiction over the relator's claims); *United States ex rel. Findley* v. *FPC-Boron Employees' Club*, 105 F.3d 675, 688 (D.C. Cir. 1997) (same); *United States ex rel. Ward* v. *Commercial Metals Co.*, C.A. No. C-05-56, 2007 WL 1390612, at *4-6 (S.D. Tex. May 9, 2007) ("The fact that [relators] were the first to realize the possible legal significance of the underlying facts is . . . irrelevant" under the Public Disclosure Bar.).

As the Eleventh Circuit has held, "it is well settled and self-evident that the False Claims Act is a fraud statute for the purposes of Rule 9(b)," and that the heightened pleading requirements of Rule 9(b) "apply to actions under the False Claims Act." *United States ex rel. Clausen* v. *Lab. Corp. of Am.*, 290 F.3d 1301, 1308-09, 1309-10 (11th Cir. 2002). Thus, to state a claim under the FCA, Relators must plead "facts as to time, place, and substance of the defendant's alleged fraud," and "the details of the defendants' allegedly fraudulent acts." *Id.* at 1310 (quoting *Cooper*, 19 F.3d at 567-68).

More specifically, to state their "reverse false claims" causes of action, Relators must plead, with the particularity mandated by Rule 9(b): (1) "a false record or statement"; (2) defendants' "knowledge of the falsity"; (3) that defendants "ma[d]e[], use[d], or cause[d] to be made or used" the false statement; (4) that defendants did so "for the purpose of conceal, avoid or decrease an obligation to pay money to the government"; and (5) the "materiality of the misrepresentation." *United States ex rel. Cullins* v. *Astra, Inc.*, No. 09-60696-CIV., 2010 WL 625279, at *5 (S.D. Fla. Feb. 17, 2010). Conclusory assertions of these elements without factual specifics will not suffice.

Here, Relators have conceded, both in their opposition brief and at oral argument, that they "have not alleged fraud" in the Complaint and do not have any "grounds to do so." (Rels.' Opp. Br. at 49; *see* Hear. Tr., June 22, 2010, at 38). By these admissions, Relators concede their failure to allege the required elements of their claims under this "fraud statute" -- that each defendant made a false statement, did so knowing the statement to be false *and* did so for the purpose of concealing or avoiding an obligation to pay money to the U.S. government. *See Astra*, 2010 WL 625279, at *5; *see also Clausen*, 290 F.3d at 1309-10.

Instead, what Relators allege in the Complaint is that Paychex, ADP and Ceridian made securities filings -- which Relators assert are truthful and accurate -- and filed corporate tax

18

returns pursuant to which defendants paid taxes on the interest income they generated. No facts are alleged to have been withheld by defendants or concealed from the government by defendants. In the context of a "reverse false claims" action, the absence of factual particularity stating that the defendant engaged in a knowing deceit to keep money belonging to the government is fatal. *See Astra*, 2010 WL 625279, at *5; *United States ex rel. Romanosky* v. *Aggarwal*, No. 6:03-cv-117-Orl-31KRS, 2005 WL 6011259, at *7 (M.D. Fla. Feb. 10, 2005).

Moreover, Relators have also failed to allege, as they must to plead properly a "reverse false claims" action, that defendants owed "a definite and clear obligation to the United States" at the time of the alleged false statements. *Aggarwal*, 2005 WL 6011259, at *7 (citing *United States* v. *Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1237 (11th Cir. 1999) (en banc)). Relators argue this pleading requirement is satisfied by "the absence of an authorizing statute" permitting payroll providers like Paychex, ADP and Ceridian to collect interest on client funds before remittance to the IRS. That argument, however, has the law backwards. The burden is on Relators to allege, with the particularity required by Rule 9(b), "a definite and clear obligation" that defendants are seeking to avoid or conceal, such as a clear, valid statute, rule, regulation, contractual provision or judgment unambiguously prohibiting defendants' conduct and compelling them to remit any such interest to the Federal government. *Id.* The Complaint in this case -- in which Relators fail to allege any well-settled pre-existing obligation, established liability or judgment requiring the defendants to pay money to the government, and, in fact, note that they are raising "an issue of first impression" and asking the Court "to make new [F]ederal common law" -- falls well short of that standard. *See, e.g., Aggarwal*, 2005 WL 6011259, at *7 (dismissing "reverse false claims" action where the relator "failed to allege, with particularity,

the existence of a current legal obligation owed by Defendants, whether in the form of a judgment, fine, levy or contractual obligation").[8]

In sum, the specific and detailed facts essential to stating a cognizable "reverse false claims" action under section 3729(a)(7) of the FCA are absent from the Complaint. Relators therefore have failed to plead adequately a claim against defendants under Rule 12(b)(6) and Rule 9(b).

## IV.

## CONCLUSION

Accordingly, after careful review of the record and the written and oral arguments relating to defendants' motions, and the Court being otherwise fully advised, it is:

**ORDERED, ADJUDGED and DECREED** that

1.    Defendant Paychex's, Defendant ADP's and Defendant Ceridian's Motions to Dismiss (D.E. #s 33-40) are each and all **GRANTED IN FULL**;

2.    The Complaint (D.E. # 1) is hereby **DISMISSED WITH PREJUDICE**; and

3.    The Court retains jurisdiction for an adjudication of the fees, costs, and expenses, if any, to be awarded.

---

[8]   The *en banc* Eleventh Circuit has declined to date to decide whether "a potential obligation would satisfy the requirements of § 3729(a)(7)." *Pemco*, 195 F.3d at 1237 n.2. Courts that have considered the question, including the District Courts in the Eleventh Circuit, however, have held that the provision requires a specific, pre-existing legal obligation. *See, e.g.*, *Aggarwal*, 2005 WL 6011259, at *7 (collecting cases). And, even if a "potential obligation" were considered sufficient, it would make no difference here. Given the lack of specificity to their allegations as noted above, Relators have not adequately alleged any "potential obligation" either.

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice

Building and United States Courthouse, Miami, Florida, dated this 15th day of July, 2010.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: *Counsel for Relators*

Betty Barber
13531 S.W. 101 Lane
Miami, Florida 33186

Roxanne A. Joffe
9969 S.W. 121st Street
Miami, Florida 33176

cc: *Counsel for Defendants*

Allan J. Arffa
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
*Attorney for Defendant Automatic Data Processing, Inc.*

Mark Paul Schnapp
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL 33131
*Attorney for Defendant Automatic Data Processing, Inc.*

Jeffrey Mark Weissman
Weissman Dervishi Borgo & Nordlund
Emerald Lake Corporate Park
3109 Stirling Road
Suite 101
Fort Lauderdale, FL 33312-6558
*Attorney for Defendant Ceridian Corporation*

Peter W. Carter
John Rock
Oliver McKinstry
Dorsey & Whitney LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402
*Attorneys for Defendant Ceridian Corporation*

Michael P. Matthews
Foley & Lardner LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
*Attorney for Defendant Paychex, Inc.*

Thomas Carlucci
Foley & Lardner LLP
555 California Street
Suite 1700
San Francisco, CA 94104-1520
*Attorney for Defendant Paychex, Inc.*

Mary Leslie Smith
Foley & Lardner LLP
One Biscayne Tower
Two South Biscayne Blvd.
Suite 1900
Miami, FL 33131
*Attorney for Defendant Paychex, Inc.*